In re the Marriage of Kathleen M. SATURNINI, Petitioner, Respondent,

v.

Thomas H. SATURNINI, Appellant.

No. C5–86–69.

Court of Appeals of Minnesota.

July 22, 1986.

Thomas T. Smith, Smith, Carpenter, Benshoof & Klein, P.A., Thomas J. Keyes, Beltrami Co. Atty., Alan R. Felix, Asst. Co. Atty., Bemidji, for respondent.

Jennifer R. Wellner, Duranske Law Offices, Bemidji, for appellant.

Heard, considered and decided by LESLIE, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

FOLEY, Judge.

Approximately one month after the final decree of dissolution was entered following a trial at which Thomas H. Saturnini failed to appear, he moved to vacate or amend portions of the decree which related to support, visitation and the property settlement. Appellant now challenges the trial court denial of his motions. We affirm and remand for a determination of support as of January 1, 1986.

## FACTS

On September 9, 1985, the trial court entered its judgment and decree in this dissolution action commenced by Kathleen M. Saturnini. Following a hearing at which respondent and her attorney appeared and at which appellant did not appear and was not represented, the trial court awarded the parties the personal property in their possession, awarded respondent $7,500 as a property settlement, ordered appellant to pay $500 per month as child support, granted respondent custody of their minor child and granted appellant "supervised visitation in [respondent's] home on no less than 48–hour notice."

Appellant had moved to Alaska during the parties' separation and returned to Bemidji only to accept service of the summons and complaint. He provided respondent's attorney with his mailing address but did not respond to interrogatories about his income and assets. He paid no child support during this time and concealed his earnings from respondent. Appellant returned to Bemidji in September 1985 and was jailed for failing to make any support payments. Appellant's income records were made available to the County and arrangements were then made to have support and arrearages deducted directly from his wages. On October 21, 1985, appellant moved to vacate or amend the dissolution decree which he had received at the address where the financial interrogatories were sent before trial.

Appellant explained that he did not appear for the dissolution hearing because he understood that his wife would be awarded the same level of support for their minor child (born December 17, 1979) as she received during their approximate two-year separation. Respondent had received $308 per month in AFDC from Beltrami County during this period. The County allocated $230 of this support for appellant's minor child and had a pending order for appellant to reimburse the County this portion. (Respondent also supported a child of a prior marriage with her AFDC grant and worked 28–48 hours per week at a wage of $4.50 per hour.)

On December 6, 1985, the trial court denied appellant's motions, affirming the decree in all respects except as to visitation which was modified to provide supervised and structured visitation for the next six months rather than 48–hour advance notice

visitation in the respondent's home. The trial court concluded that the appellant's failure to contest the dissolution was not the result of mistake, inadvertence, surprise or excusable neglect, that respondent and her former attorney did not mislead or defraud appellant in obtaining the dissolution judgment, that the appellant's failure to disclose his financial condition was in bad faith, that this bad faith estopped him from obtaining equitable relief, that there were no grounds for vacating the judgment and decree of dissolution, and that he had failed to demonstrate a change in circumstance which would justify modifying his child support payments. The court ordered appellant to pay $900 in attorney's fees, continued child support at $500 per month and allowed supervised visitation every other Saturday afternoon for six months.

No appeal from the judgment was taken, although the 90–day period had not expired when appellant brought his motions to vacate or amend the decree. Appellant appeals from the trial court's order of December 6, 1985, denying his motions.

### ISSUES

Did the trial court abuse its discretion in:

1. Refusing to vacate or modify the dissolution decree with respect to the property settlement?

2. Refusing to amend the judgment to modify appellant's child support payments?

3. Modifying visitation?

4. Awarding respondent her attorney's fees?

### ANALYSIS

1. *Vacate judgment?*

Appellant alleges that the trial court abused its discretion in refusing to vacate parts of the dissolution judgment and decree since some portions were based on his mistake in failing to obtain representation because of certain understandings and beliefs he held and that other portions were based on misrepresentations respondent had made with respect to the value of appellant's welding truck. He also claimed respondent's attorney had made misrepresentations to him causing him not to appear at the hearing.

Rule 60.02 of the Minnesota Rules of Civil Procedure does not provide for vacation of a dissolution decree for mistake, surprise or excusable neglect.

On motion and upon such terms as are just, the court may relieve a party * * * from a final judgment *(other than a divorce decree)*, * * * for the following reasons: (1) Mistake, inadvertence, surprise or excusable neglect; * * *, or (6) any other reason justifying relief from the operation of the judgment. * * * This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, * * * or to set aside a judgment for fraud upon the court.

Minn.R.Civ.P. 60.02 (emphasis supplied).

■ A trial court may only set aside a judgment in a dissolution decree "where it determines that such a judgment amounts to fraud upon the court." *Lindsey v. Lindsey*, 388 N.W.2d 713 (Minn.1986); *see also Bredemann v. Bredemann*, 253 Minn. 21, 25, 91 N.W.2d 84, 87 (1958). This court therefore need not review all of the errors claimed by appellant, only the claims relating to potential fraud upon the court.

■ Here, the claim of fraud was that respondent misrepresented the value of appellant's welding truck to the court in order to obtain the $7,500 property settlement. When appellant did not appear at the trial and failed to answer financial interrogatories, the court was forced to rely on the only credible evidence available as to the truck's value. Respondent testified that she had talked to dealers and was informed that appellant's welding truck, as she described it, was probably worth $25,000. The trial court valued the truck at $25,000.

Appellant presented no direct or expert evidence on the truck's value at the motion hearing. His only evidence was a business card of a Chevrolet salesman that had a handwritten note stating "1980 Chev 1 ton

cab & chassis; High book 4150." Appellant stated in his affidavit that his improvements increased the truck's value to $6,648. He did not address respondent's claim that the truck was sold in Alaska and the bank note paid off.

The evidence does not demonstrate fraud upon the court. As the trial court found: "[Appellant's] bad faith estops him from obtaining the equitable relief required in his motion." Further, the $7,500 property settlement could have represented an apportionment of appellant's savings and income earned and concealed during separation.

■ Appellant also claimed that respondent's trial attorney made representations to him which caused his failure to defend the dissolution action. The trial court finding that this attorney "made no oral or written representations to [appellant] of a misleading nature," is supported by the attorney's affidavits, letters to appellant, and other evidence in the record.

### 2. *Support*

■ Appellant also argues the trial court erred refusing to amend the property settlement, child support and visitation portions of the final decree. Only the visitation and support claims are subject to modification. *See Angelos v. Angelos,* 367 N.W.2d 518, 520 (Minn.1985).

Appellant moved for a reduction in child support based on a substantial decrease in his income. He left employment in Alaska where he had earned a gross income of $31,000 (and net income of $20,000) through August 1985, to return to Bemidji where he commenced employment in September that netted about $295 per week. The original decree ordered appellant to pay $500 per month in child support.

The trial court held that appellant "has failed to demonstrate a change in circumstance which would justify modifying his child support payments." *See Minn.Stat.* § 518.64, subd. 2 (1984). The record shows that appellant's average 1985 income, which was concealed from the court until this action was commenced, supported the $500 order.

However, as the County admitted, this level of support would not be justified after December 1985 if appellant remained employed in Bemidji and did not return to Alaska. Therefore, although we affirm the trial court's decision to refuse to modify support in late 1985 when the motion was heard, we remand to expedite the trial court's consideration of whether support should be modified as of January 1, 1986, as recommended by the County in its alternative recommendation. The guidelines require that support be based on the obligor's "present ability to pay." *See Kramer v. Kramer,* 372 N.W.2d 364, 367 (Minn.Ct. App.1985), *pet. for rev. denied,* (Minn. Oct. 11, 1985). Evidence and testimony should be taken to determine whether support should be modified as of January 1, 1986, based on appellant's current ability to pay.

### 3. *Visitation*

■ The trial court awarded the respondent custody of the minor child subject to appellant's visitation in respondent's home on no less than 48-hour notice. Although appellant did not appeal from the judgment, we note that the court's decision was supported by specific findings based on the record.

When appellant moved to modify his visitation rights, respondent submitted an affidavit which challenged his interest in and ability to care for the child. She indicated that the child is well adjusted to her present situation and that:

> [Appellant] has very little experience dealing with children. Often his behavior has been quite immature for an adult male. He has scratched on windows and rapped on walls to scare me. He has snuck around in the bushes and hidden down the alley to spy on us.
>
> Visitation in a structured environment would assist [appellant] in learning how to properly relate to his child.

Since the original decree set visitation, appellant had to meet the modification standard in order to change visitation.

Minn.Stat. § 518.175, subd. 5 (1984). This section emphasizes that the court consider the best interests of the child. *Id.* The court's findings indicate that:

> [Appellant] has acted irresponsibly towards his former wife and child.
>
> The county had to support [appellant's] minor child because [appellant] failed to make required support payments.

Appellant conceded at the modification hearing that supervised visitation of three Saturday afternoons a month would be appropriate for a three-month period, with liberal visitation thereafter. The trial court modified visitation by allowing appellant supervised visitation every other Saturday afternoon by an adult agreeable to both appellant and respondent for a six-month period.

The record shows that appellant did not contact the child during his entire absence of late 1984 to September 1985 and, according to respondent's affidavit, did not contact the child after returning from Alaska up until the date of her affidavit, October 31, 1985. Now in her brief, respondent notes that appellant has not even sought to carry out the limited, supervised visitation schedule set by the court's December 6, 1985 order. The six-year-old child has had no real contact with her father, due to his apparent lack of interest, for approximately 3 years.

The trial court's decision appropriately determined what was in the best interests of the child, basically affirming its conclusion reached only three months earlier, that:

> It is in the best interests of the child that visitation continue to be supervised until such time as [appellant] has restored a parent-child relationship with the minor child and has demonstrated an ability to control his alcohol use so as not to endanger the minor child when she is in his possession.

### 4. *Attorney's fees*

Appellant claims fees were inappropriately awarded since child support payments significantly reduce his income.

■ The trial court found that reasonable attorney's fees of $900 were required by respondent to defend appellant's motions. *See* Minn.Stat. § 518.14 (1984). As respondent notes, she was forced to hire another attorney to represent her at this hearing because of appellant's claim that her former attorney made misrepresentations to him. In September, when appellant moved to vacate or modify the judgment, he had just terminated employment where he grossed substantial earnings. Although he commenced new employment netting substantially less, respondent and her two children were surviving all this time on a part-time hourly job plus AFDC benefits. In addition, it is apparent that the issues raised could have been raised at the dissolution hearing if appellant had made an appearance, and the collateral attack on the judgment and motion to modify may not have been necessary. The trial court did not abuse its discretion in awarding attorney's fees to respondent.

### DECISION

We affirm the trial court decision in all respects except that we remand the issue of child support to the trial court in order that it may determine, as of January 1, 1986, whether appellant's support obligation should be reduced based on his current ability to pay.

Affirmed and remanded.